IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTHONY CRAWFORD,

    Plaintiff,       No. CIV S-02-1180 GEB JFM P

vs.

K. TASISTA, et al.,

    Defendants.      <u>FINDINGS & RECOMMENDATIONS</u>

_____/

    Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that defendants violated his constitutional rights by issuing a false disciplinary report against him and convicting him of the disciplinary charge in retaliation for the exercise of his rights under the First Amendment. This matter is before the court on cross-motions for summary judgment.

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

    Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions

1

on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On January 9, 2004, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

ANALYSIS

As noted above, plaintiff claims that defendants violated his constitutional rights by retaliating against him through issuance of, and conviction on, false disciplinary charges.

3

Defendants seek summary judgment on the ground that the actions taken against plaintiff were motivated by plaintiff's disruptive behavior and not by his exercise of his rights under the First Amendment. Defendants also contend they are entitled to qualified immunity.

I. Facts

    A. Undisputed Facts

On September 1, 2001, plaintiff was employed as an inmate worker in the Facility C law library at Mule Creek State Prison. Defendant Tasista was employed as a Library Technical Assistant in the same library. On the morning of September 1, 2001, when plaintiff reported to work, four of his inmate co-workers told him that custody staff had the day before confiscated a coffee pot and mugs that had been in the library since plaintiff started working there on August 3, 2000. Plaintiff and his co-workers asked for defendant Tasista's help in getting the coffee pot and mugs back. Defendant Tasista declined to ask for the return of the coffee pot and mugs.

The five inmates presented defendant Tasista with a petition seeking the return of the coffee pot and mugs. Later that morning, defendant Tasista began to feel ill and she developed a "splitting headache." (Declaration of Tasista in Support of Motion for Summary Judgment, filed August 31, 2005, at ¶ 16.) While she was looking for aspirin for her headache, she "ran into the administrator of the day" and told him she was experiencing difficulties with plaintiff and the other inmates. (Id. at ¶ 17.) The administrator decided to close the library for the day.

When Tasista returned to work on September 4, 2001, her supervisor and an associate warden met her and asked her if she wanted the five inmates removed from their jobs. She told them that she wanted four of the five inmates, including plaintiff, removed from their jobs. She also issued a rules violation report against those four inmates. Plaintiff was charged with inciting, in violation of California Code of Regulations, title 15, § 3004(b). A disciplinary hearing was held on September 15, 2001. Defendant Tasista testified at the hearing at plaintiff's

request. At the conclusion of the hearing, defendant Brown found plaintiff guilty of the charges. Plaintiff lost time credits as a result of the conviction. The lost time credits were restored in November 2004.

B. Disputed Facts

Defendant Tasista avers that after she declined to seek the return of the coffee pot and mugs, plaintiff "continued to pester and badger [her] about the pots and mugs, demanded to know why they had been removed, and continuously questioned [her] involvement in the confiscation of these items." (Tasista Declaration, at ¶ 8.) Defendant Tasista further avers that plaintiff instigated and encouraged the other inmates to continue complaining to her about the confiscation of the coffee pot and mugs. (Id. at ¶ 9.) Defendant Tasista avers that she "repeatedly told [plaintiff] and the other inmates to cease their complaints about the pot and mugs" and that plaintiff would "reignite" the complaints whenever they began to subside. (Id. at ¶ 10.) Defendant Tasista avers that after she received the inmates gave her a letter addressed to the Senior Librarian and signed by all of them seeking the return of the pot, she told them to "quit bringing up the subject" but only an inmate named Morales complied with her order. (Id. at ¶ 12.) Defendant Tasista avers that the fact that the inmates signed a letter "did not bother [her]; rather it was the relentless, questioning, arguing, and complaining by the inmates, [plaintiff] in particular, that [she] found disturbing." (Id. at ¶ 13.)

Plaintiff disputes that he questioned or pestered defendant Tasista at all about her unwillingness to seek a return of the coffee pot. In support of his opposition to defendants' motion, plaintiff has presented declarations signed by his three co-workers who were also removed from their jobs as a result of the events at bar. Inmate Huntley avers that on the morning of September 1, 2001, the workers "went about [their] normal routine duties" and that "[e]verything proceeded normally" until approximately 11:30 a.m., when they were informed that the library was closing for the day because defendant Tasista was not feeling well. (Ex. C to Opposition to Defendants' Motion for Summary Judgment, Affidavit of Wm. Frank Huntley, Jr.,

filed November 8, 2005.) Inmate Oguendo avers that on the morning of September 1, 2001, defendant Tasista "seemed different" as though "there was something troubling her" and that otherwise "the operation of the library was going well & with no problems." (Id., Affidavit of Enrique Oguendo.) Inmate Daniel R. Lopez avers that on the morning of September 1, 2001, defendant Tasista seemed to be "pre-occupied." (Id., Affidavit of Daniel R. Lopez.) He further avers that "[d]uring the course of the morning I never saw A. Crawford show any form of disrespect and/or hostility towards Ms. Tasista." and that "Ms. Tasista never warned A. Crawford or the other library clerks of problems with his or their conduct." (Id.) Plaintiff also tenders affidavits from two other inmates who were present in the library on the morning of September 1, 2001, and observed nothing unusual. (Ex. D to Plaintiff's Opposition, Affidavits of Nhan Nguyen and Leng Vang.)[1]

II. Legal Standards

    A. Retaliation

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) harmed the prisoner and (5) was not narrowly tailored to advance a legitimate correctional goal.

Rhodes v. Robinson, 380 F.3d 1123, 1130 (9th Cir. 2004) (citing Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir.2000) and Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994)); see also Hines v. Gomez, 108 F.3d 265, 267 (9th Cir.1997).

    In support of their motion for summary judgment, defendants contend that plaintiff was not disciplined for signing the petition seeking return of the coffee pot and mugs.

---

[1] Plaintiff has also submitted four "Work Supervisor's Reports" evaluating his performance as a library worker, including one signed by defendant Tasista on September 13, 2001. (Ex. F to Plaintiff's Opposition.) Defendant Tasista's report is for the period from July 1, 2001-August 31, 2001, gives plaintiff grades of satisfactory and/or above average for all categories, and describes plaintiff as "more preoccupied with pending legal case . . . very knowledgeable of legal issues." (Id.)

1  Defendants contend that defendant Tasista issued the rules violation report because plaintiff
2  ignored her orders to stop talking about the coffee pot and mugs and kept inciting the other
3  inmates to join him in seeking the return of the coffee pot and mugs.  Plaintiff contends that he
4  did not engage in the disruptive behavior attributed to him by defendant Tasista, and he has
5  presented evidence in support of his position sufficient to raise a triable issue of material fact
6  about whether he did anything more than sign and circulate the petition requesting return of the
7  coffee pot and mugs.  With respect to plaintiff's retaliation claim against defendant Tasista, this
8  factual dispute must be resolved by a jury and neither defendant Tasista nor plaintiff are entitled
9  to summary judgment on this claim.

10         Defendant Brown seeks summary judgment on the ground that he found plaintiff
11 guilty based on defendant Tasista's statements that plaintiff had continued to complain and incite
12 other inmates despite her orders to stop, and not because plaintiff and other inmates had signed a
13 petition seeking return of the pot and mugs.  (Brown Declaration, at ¶¶ 12-13.)  Plaintiff's
14 opposition to defendant Brown's motion for summary judgment is grounded in the same dispute
15 he raises concerning defendant Tasista's version of the events that led to issuance of the rules
16 violation report.  That dispute is not, however, material to plaintiff's retaliation claim against
17 defendant Brown.

18         Plaintiff's retaliation claim against defendant Brown arises from defendant
19 Brown's decision to find plaintiff guilty of the rules violation charged by defendant Tasista.
20 Defendant Brown based his decision on the written rules violation report from defendant Tasista,
21 plaintiff's statement at the time of the hearing that he did "not have any interest in any of that
22 property and I did not do that behavior," and defendant Tasista's statement that plaintiff had
23 continued to "say small snide remarks that would agitate the other inmates and get them started
24 again" and that plaintiff's behavior was "both disrespectful and showed contempt for authority
25 and her." (Defendants' Ex. 1, at 3.)  Although defendant Brown's description of the rules
26 violation report in his findings includes a reference to the petition, that reference alone is

insufficient to create a jury question as to whether defendant Brown's decision to find plaintiff guilty of the disciplinary charges was in retaliation for the exercise of constitutionally protected conduct.  There is no evidence that defendant Brown made that decision based on anything other than his assessment of the evidence presented to him at the disciplinary hearing, and no evidence that defendant Brown had any reason to believe that defendant Tasista's version of events was false.

For the foregoing reasons, this court finds that defendant Brown is entitled to summary judgment.

### B.  Qualified Immunity

Defendants also contend that they are entitled to qualified immunity from liability. State officials are "entitled to qualified immunity from § 1983 claims unless (1) their alleged conduct violated a constitutional right, and (2) that right was clearly established. . . .  In determining whether a right was clearly established, we do not consider the right as a "'general proposition.'" . . .  Rather, "'[t]he relevant, dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  Edgerly v. City and County of San Francisco, __ F.3d __, 2007 WL 2034040, slip op. at 6 (quoting Saucier v. Katz, 533 U.S. 194, 201-02 (2001)).

For the reasons set forth in section IIA, supra, defendant Brown is entitled to summary judgment on the merits of plaintiff's retaliation claim against him.  For the reasons set forth supra, the conduct of defendant Brown did not violate plaintiff's constitutional rights and "there is no necessity for further inquiries concerning qualified immunity" as to plaintiff's claim against defendant Brown.  Saucier, at 201.

With respect to defendant Tasista, as discussed above there are disputed issues of material fact that preclude summary judgment for said defendant.  Where defendant's "entitlement to qualified immunity depends on the resolution of disputed issues of fact in [her] favor, and against the non-moving party, summary judgment is not appropriate."  Wilkins v. City

8

of Oakland, 350 F.3d 949. Summary judgment on plaintiff's claim against defendant Tasista depends on resolution of disputed issues of fact in her favor. For that reason, defendant Tasista is not entitled to qualified immunity.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's August 15, 2005 motion for summary judgment be denied;

2. Defendants' August 31, 2005 motion for summary judgment be granted as to plaintiff's claim against defendant Brown and denied as to plaintiff's claim against defendant Tasista; and

3. This matter be referred to the undersigned for further pretrial proceedings.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir.1991).

Dated: August 14, 2007.

UNITED STATES MAGISTRATE JUDGE

012
craw1180.57